```
                                          USDC-SDNY
                                          DOCUMENT
UNITED STATES DISTRICT COURT              ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK             DOC#:
                                          DATE FILED: 11/04/2016
```

AFAM UZOUKWU,

                Plaintiff,

     v.                                      No. 10-CV-4960 (RA)

MICHELE KRAWIECKI and CARL                    OPINION & ORDER
MILUSO,

                Defendants.

RONNIE ABRAMS, United States District Judge:

After a six-day trial, the jury in this Section 1983 action, in which Plaintiff Afam Uzoukwu alleges that he was falsely arrested by Officers Michele Krawiecki and Carl Miluso, returned a verdict for Defendants. Uzoukwu now moves for judgment as a matter of law ("JMOL") pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59(a). For the reasons that follow, the motion is denied.

## BACKGROUND

Uzoukwu initiated this action on June 25, 2010, alleging that he was falsely arrested and subjected to excessive force on May 15, 2008 while sitting in Dutch Kills Playground (the "Playground") in Queens, New York. After the case was reassigned to this Court, on August 7, 2013, the Court granted Defendants' motion for partial summary judgment, dismissing (i) Uzoukwu's claims against the City of New York, on account of his failure to present evidence of a municipal policy, and (ii) his state law claims asserted for the first time in the joint pretrial order. Uzoukwu proceeded to trial on his false arrest and excessive force claims against the individual officers. The jury returned a verdict for Defendants, and Uzoukwu appealed.

On November 5, 2015, the Second Circuit vacated the verdict and remanded for a new trial on the false arrest claim. *See Uzoukwu v. City of New York*, 805 F.3d 409, 419 (2d Cir. 2015).[1] The second trial began on May 3, 2016, and on May 10, 2016, the jury again returned a verdict in favor of Defendants. At the close of evidence and before the case was submitted to the jury, Uzoukwu moved for JMOL pursuant to Federal Rule of Procedure 50(a), which the Court denied without prejudice to renewal after the jury returned its verdict. Uzoukwu now timely renews his motion, and also seeks a new trial pursuant to Rule 59(a).

## STANDARD OF REVIEW

Where a jury has returned a verdict for the non-movant, a court may grant JMOL "only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been compelled to accept the view of the moving party." *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 180 (2d Cir. 2016) (quoting *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011)); *see also* Fed. R. Civ. Pro. 50(a) (A court may grant a motion as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."). That burden is "'particularly heavy' where, as here, 'the jury has deliberated in the case and actually returned its verdict' in favor of the non-movant." *Cash*, 654 F.3d at 333 (quoting *Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005)). A court should accordingly set aside a jury's verdict only "where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against him."

---

[1] The Circuit affirmed the Court's dismissal of the state law claims and claims against the City of New York and found no error so as to disrupt the jury's verdict on the excessive force claim. *See Uzoukwu*, 805 F.3d at 419.

2

*Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 180 (2d Cir. 2016) (alteration in original) (quoting *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 197 (2d Cir. 2014)). In deciding such a motion, "'[t]he court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury,' and 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001)).

Uzoukwu also moves for a new trial pursuant to Rule 59(a), which permits a court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The standard under Rule 59(a) is less stringent than that of Rule 50 in two respects: "(1) a new trial under Rule 59(a) 'may be granted even if there is substantial evidence supporting the jury's verdict,' and (2) 'a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'" *Manley v. AmBase Corp.*, 337 F.3d 237, 244–45 (2d Cir. 2003) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133–34 (2d Cir. 1998)). "That being said, for a district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence." *Id.* (internal citation and quotation marks omitted).

## DISCUSSION

### I.   Probable Cause

Uzoukwu argues that the jury had no basis to find there was probable cause to arrest him on any of the grounds advanced by the Defendants, namely, (1) violation of a park rule, (2) disorderly conduct, and (3) obstruction of governmental administration. If the evidence adduced

3

at trial suffices on any of the three bases, Uzoukwu's motion must fail. The record at trial, however, suffices to support each one of them.

"The existence of probable cause to arrest—even for a crime other than the one identified by the arresting officer—will defeat a claim of false arrest under the Fourth Amendment." *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152–54 (2014)); *see also Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) ("A finding of probable cause is a complete defense to false arrest claims." (citing *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007)). "Probable cause exists where the facts and circumstances within . . . the officers' knowledge and of . . . which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012) (quoting *Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979)). As the Second Circuit has emphasized, the standard is a "fluid" one "that 'does not demand hard certainties or mechanistic inquiries'; nor does it 'demand that an officer's good-faith belief that some suspect has committed or is committing a crime be correct or more likely true than false." *Figueroa*, 825 F.3d at 99 (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 389, 390 (2d Cir. 2013)). "Rather, it requires only facts establishing 'the kind of fair probability' on which a 'reasonable and prudent' person, as opposed to a 'legal technican[ ],' would rely." *Id.* (alteration in original) (quoting *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013)). "When determining whether probable cause existed to support an arrest," a court may "'consider those facts available to the officer at the time of arrest and immediately before it,' and . . . must render [its] decision based on the 'totality of the circumstances.'" *Simpson*, 793 F.3d at 265 (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). "The arresting officer need not have had probable cause to arrest

4

the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged." *Tompkins v. City of New York*, 50 F. Supp. 3d 426, 433 (S.D.N.Y. 2014) (citing *Devenpeck*, 543 U.S. at 153; *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006)). "As long as there was probable cause to arrest the plaintiff for *any* offense . . . a false arrest claim will fail." *Id.* (citations omitted).

### A. Violation of Park Rule

The record, when viewed in the light most favorable to the Defendants, provides ample support for a jury finding that there was probable cause to arrest Uzoukwu for violation of the park rule which prohibits adults without children. Section 1-03(c)(2) of the New York City Department of Parks and Recreation Rules and Regulations provides that, "[n]o person shall fail to comply with or obey any instruction, direction, regulation, warning, or prohibition, written or printed, displayed or appearing on any park sign." *People v. Davis*, 867 N.Y.S.2d 19 (N.Y. App. Term 2008) (unreported table decision) (citing 56 RCNY 1-03(c)(2), *aff'd*, 912 N.E.2d 1044 (N.Y. 2009). "Violation of rule 1-03(c)(2) is punishable as a class B misdemeanor, the maximum penalty for which is 90 days' imprisonment and a $1,000 fine." *Davis*, 912 N.E.2d at 1045 (citing 56 RCNY 1-07(a); Penal Law § 70.15(2)).

Officers Miluso and Krawiecki testified that they arrived at the Playground at around 5:00 p.m. on May 15, 2008, and entered through the Crescent Street entrance of the Playground. Tr. 54:2–10; 58:7–16. Both Officers testified that there was a sign at that entrance, which listed the Playground rules and prohibited "[a]dults except in the company of children." *See* Defs.' Ex. H; Tr. 65:24–67:1; 156:2–14; 237:7–15. Defendants also presented evidence that this sign was posted at other entrances to the park. Defs.' Ex. F–G, U; Tr. 169:20–170:5. Upon entering the park, the Officers scanned the park, Tr. 297:20–21, and first approached an individual who, based on their initial observation, was not accompanied by children. Tr. 140:14–24. When that individual

pointed out his child, they moved on. Tr. 140:25–141:6. The Officers then saw Uzoukwu seated by himself in a bench area abutting a set of swings. Tr. 73:21–25. They approached him because they saw no indication that he was accompanied by children, noting that he was looking "strictly downward," eating Jell-O, Tr. 76:8–11, and that he did not have any items suggesting he was with children. Tr. 142:6–14; 297:19–24. After approaching, they asked him several times if he was there with children, but he did not respond. 143:6–9; 298:3–13. They told him that, if he was not with children, then he was not allowed to be in the park. Tr. 84:17–19; 143:23–25; 298:14–22. He did not respond. Tr. 298:23–25. As described in more detail below, at this point, the situation escalated: Officer Krawiecki took the Jell-O from Uzoukwu's hands, at which point he stood up and began screaming and cursing at the Officers. Tr. 145–149; 299–300. The Officers again told Uzoukwu to leave the Playground, but he did not heed their orders. Tr. 146:5–8. Unable to get Uzoukwu to calm down, the Officers called their supervising officer, Sergeant Papagiannis, to assist. Tr. 125:14–126:4; 151:2–3. The Sergeant tried to speak to Uzoukwu, and also asked him if he was in the Playground with children, but Uzoukwu did not answer him, and instead continued to scream and yell obscenities at the Officers. Tr. 151:9–12. Both Officers testified that throughout the entire interaction, Uzoukwu never said that he was with his children, called out to children, or did anything to indicate his children were with him. No children approached him either. Tr. 146:9–12; 298:23–25. Officer Krawiecki thus testified that she concluded that he was not with children, in violation of the park rule. Tr. 447:6–10; *see also* Pl's Ex. 2. Viewed in the light most favorable to Defendants, this testimony is sufficient for the jury to have found that Defendants had probable cause to arrest Uzoukwu because he was in the playground unaccompanied by children, a violation of the posted park rule, and he refused to leave when notified of the rule.

Uzoukwu challenges the propriety of the Playground rules, which he views as "nonsensical" and ripe for "arbitrary enforcement." Pl.'s Mem. 2, 11. The prudence of the rules, however, is not at issue. Nor has Uzoukwu brought a claim for selective enforcement. Rather, the relevant question is whether an objective officer of reasonable prudence believed that there was a "fair probability" that Uzoukwu was in violation of the playground rule. *See Florida*, 133 S. Ct. at 1055. For the reasons discussed above, there was sufficient evidence for the jury to conclude there was.

Uzoukwu also argues, for the first time, that the Court should have held as a matter of law that the rule did not apply to the bench area where Uzoukwu was sitting, arguing that "[c]ommon sense dictates" such a conclusion. Pl.'s Mem. 11.[2] Uzoukwu, however, maintained at trial that this was a factual matter to be left to the jury. *See* Tr. 912:22–23 ("This is a fact for [the jury] to decide."). Uzoukwu thus waived any argument that the Court should have instructed the jury on the park rule as a matter of law. *See Samuels v. Air Transp. Local 504*, 992 F.2d 12, 14 (2d Cir. 1993) (Rule 50 "limit[s] the grounds for judgment n.o.v. to those specifically raised in the prior motion for a directed verdict."); *Lavoie v. Pac. Press & Shear Co.*, 975 F.2d 48, 55 (2d Cir. 1992) ("Failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection."). In light of the posted signs at multiple entrances to the

---

[2] Plaintiff asserts that *People v. Battiste*, 17 N.Y.S.3d 384 (N.Y. App. Term 2015) (per curiam), "was a rejection as a matter of fact that a person commits a park violation by sitting near a children's playground." Pl.'s Mem. 12. The one-paragraph per curiam opinion, however, does not stand for this proposition. Instead, the court merely held that the specific testimony presented at that trial was "equivocal and ambiguous as to the area of the park that was restricted to the use of children and whether defendant was in such area (unaccompanied by a child)." 17 N.Y.S.3d at 384. The court thus found that the facts presented were "insufficient to establish beyond a reasonable doubt that defendant was guilty of the underlying misdemeanor offense" of being in a children's playground unaccompanied by a child. *Id.* The case is also distinguishable in that it was an appeal from a criminal conviction, whereas here, the question for the jury was whether, by a preponderance of the evidence, the police officers had probable cause to arrest Uzoukwu. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983), ("[T]he term 'probable cause' . . . means less than evidence which would justify condemnation." (internal citation omitted)). Plaintiff's reliance on this case is thus misplaced.

Playground prohibiting adults not accompanied by children, and the proximity of the seating area to a children's play area, there was sufficient evidence adduced at trial for the jury to reasonably conclude that the rule applied to the area where Uzoukwu was seated.[3]

Even assuming *arguendo* that the park rule prohibiting adults without children did not apply to the specific area in which Uzoukwu was seated, and the Officers were mistaken in their belief that it did, the trial evidence was sufficient for the jury to reasonably conclude that the Officers' mistake of law was objectively reasonable under the circumstances. *See Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014) ("[R]easonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition."). As Judge Furman held in *United States v. Diaz*, 122 F. Supp. 3d 165 (S.D.N.Y. 2015), "even if [the officer] was mistaken in her belief that the stairwell [of an apartment building] qualified as a 'public place' for purposes of the open container law," "that mistake was an objectively reasonable one and . . . [the officer] had probable cause to arrest [the defendant] for violation of the law." *Id.* at 174–76. The same is true here. As discussed above, Officers Miluso and Krawiecki testified that they observed a sign at the entrance of Dutch Kills Playground that prohibited "[a]dults except in the company of children." Tr. 65:24–67:1; 156: 2–14; 237:7–15. It was thus objectively reasonable for them to conclude that this rule applied to the seating area, within the bounds of the playground grounds and adjacent to a swing set.

---

[3] Such a conclusion is consistent with the court's decision in *People v. Garcia*, 907 N.Y.S.2d 439 (N.Y. Sup. Ct. 2010) (unreported table decision). In that case, Judge Price of the New York Supreme Court, Bronx County, rejected the defendant's "dubious argument" that the playground rules posted at the entrance of the park "contain[] rules that necessarily refer to matters exclusively limited to the playground area." *Id.* at 5. Noting that, as here, the relevant rules were posted on the exterior fence of the park, and that there were no signs demarcating a separate playground, *id.* at 2, the court reasoned that it was "patently unbelievable that the spirit of the posted sign could in any way be limited to the jungle gym/ swing area," particularly as such a ruling would compel the unreasonable conclusion that the other posted rules, including those barring drug use in the park, applied only to the playground and not the entire park. *Id.* at 7; *see also, e.g., Carvalho v. City of New York*, No. 13-CV-4174, 2016 WL 1274575 (PKC), at *6 (S.D.N.Y. Mar. 31, 2016) ("While plaintiffs deny that the [park] rules in effect at the time actually prohibited camping . . . they present no evidence supporting their conclusory denial.").

**B. Disorderly Conduct**

The jury also had sufficient grounds to find that the Officers had probable cause to arrest Uzoukwu for disorderly conduct. New York defines disorderly conduct, in relevant part, as follows:

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
> 1. He engages in fighting or in violent, tumultuous or threatening behavior; or
> 2. He makes unreasonable noise; or
> 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture . . . .

N.Y. Penal Law § 240.20(1)–(3). The offense has three elements: "(i) the defendant's conduct must be 'public' in nature, (ii) it must be done with 'intent to cause public inconvenience, annoyance or alarm' or with recklessness as to 'a risk thereof,' and (iii) it must match at least one of the descriptions set forth in the statute." *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001) (quoting N.Y. Penal Law § 240.20); *accord Adams v. City of New York*, No. 15-CV-6741 (DLC), 2016 WL 1169520, at *3 (S.D.N.Y. Mar. 22, 2016). Here, the evidence adduced at trial, viewed in the light most favorable to Defendants, satisfies all three requirements.

After the Officers approached Uzoukwu, and after he did not respond to their repeated questions as to whether he had children with him in the park, Officer Krawiecki took his Jell-O from his hand and threw it away.[4] Tr. 145:1–3. Uzoukwu, at this point, "stood up," started "screaming, yelling, cursing," and "acting out of control," yelling "fuck you, arrest me, fuck you." Tr. 146:1–4; 299:15–17. At the same time, he was throwing his hands in the air and "flailing his arms." Tr. 300:16–17; 148:9–11. Both Officers testified that people in the vicinity were alarmed

---

[4] As Officer Miluso acknowledged on the stand, in retrospect, the Officers could—and should—have "taken a different route" to get Uzoukwu's attention. *See* Tr. 85:6–86:1. To the extent that Plaintiff argues, however, that Officer Krawiecki's act of throwing out Uzoukwu's Jell-O somehow vitiated probable cause, he is mistaken. *Cf. Espada v. Schneider*, 522 F. Supp. 2d 544, 552 (S.D.N.Y. 2007) ("The probable cause inquiry focuses on the information available to the officer at the time of arrest; an officer's subjective intent is irrelevant." (citing *Devenpeck*, 543 U.S. at 152–53)).

by Uzoukwu's behavior. Tr. 92:12–93:4; 299:18–20. Officer Miluso recounted that people were "shifting from their seats, moving away," "dispersing from that immediate area," and "children were getting closer to their parents." Tr. 92:18–93:4; 94:11–15. Officer Krawiecki made similar observations, testifying that it was "very alarming" and people "were trying to move away from the scene." Tr. 299:18–23. The Officers also testified that they were concerned for their own and the public's safety. Tr. 150:16–18; 337:4–7. Uzoukwu's conduct continued even after the Officers called their supervisor Sergeant Papagianni for direction and assistance, and approximately ten to twenty minutes after the Sergeant arrived—during which Uzoukwu's screaming, yelling and cursing continued—they removed Uzoukwu from the park. Tr. 125:20-126:4, 151:17-152:3, 301:15-25.

This testimony is more than adequate for the jury to have reasonably concluded that Uzoukwu's actions satisfied the first and third elements of disorderly conduct. With respect to the first element (public conduct), Uzoukwu's conduct was plainly "public in nature." The Officers testified that the incident occurred in a public park in the presence of many parents and children, who responded to Uzoukwu's behavior by "moving away," "dispersing," or "getting closer" to one another. Tr. 92:18–93:4; 94:11–15; 299:18–23; *see Provost*, 262 F.3d at 157–58 (holding that an incident that occurred in a police station, in the presence of six or seven members of the public and a number of police officers, satisfied the "public conduct" requirement as a matter of law). With respect to the third element (enumerated forms of unlawful behavior), the Court charged the jury on three of the statute's enumerated descriptions of disorderly conduct: (1) "engag[ing] in fighting or in violent, tumultuous, or threatening behavior"; (2) "mak[ing] unreasonable noise"; or (3) "[i]n a public place . . . us[ing] abusive or obscene language, or mak[ing] an obscene gesture." Tr. 901:22–902:1; *see* N.Y. Penal Code § 240.20(1)–(3). On the basis of testimony that Uzoukwu

was "screaming, yelling, cursing," "acting out of control," and yelling "fuck you" in a public place, the jury could have reasonably determined that Uzoukwu engaged in "tumultuous" or "threatening" behavior, that he made "unreasonable noise," or that he used "abusive or obscene language" in a public place. Tr. 146:1–4; 299:15–17; N.Y. Penal Code § 240.20(1)–(3).

With respect to the second element (intent), there was sufficient evidence for the jury to have reasonably concluded that Uzoukwu was at least reckless. N.Y. Penal Law § 240.20; *see also People v. Weaver*, 944 N.E.2d 634, 636 (N.Y. 2011) ("We have made clear that a defendant may be guilty of disorderly conduct regardless of whether the action results in public inconvenience, annoyance or alarm if the conduct recklessly creates a risk of such public disruption."). In determining whether the *mens rea* requirement of disorderly conduct has been met, courts consider "the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances." *People v. Baker*, 984 N.E.2d 902, 906 (N.Y. 2013) (quoting *Weaver*, 944 N.E.2d at 636). Uzoukwu was in a public park in the late afternoon, surrounded by children and their parents, and both Officers testified that people were alarmed and disturbed by Uzoukwu's behavior. *See* Tr. 94:11–13 ("He's screaming and cursing in a playground with kids around, and people were dispersing from that immediate area . . . ."). Viewed in the light most favorable to Defendants, this evidence provided a sufficient basis for the jury to conclude that Uzoukwu at least "recklessly" created a risk of "public inconvenience, annoyance or alarm." N.Y. Penal Law § 240.20.

Uzoukwu nonetheless argues that there was insufficient evidence to support the *mens rea* requirement of disorderly conduct, contending that the officers merely "assumed" that people were alarmed. Pl.'s Mem. 19. "New York law," however, "does not impose any requirement on an

arresting officer to credit 'independent evidence of' an individual's intent to disturb the peace before arresting the individual." *Stern v. Shammas*, No. 12-CV-5210 (NGG), 2015 WL 6440647, at *3 (E.D.N.Y. Oct. 21, 2015) (quoting *United States v. Nelson*, 500 F. App'x 90, 94 (2d Cir. 2012) (summary order)). Instead, "intent may be inferred based on circumstantial evidence, including the defendant's conduct and the surrounding circumstances." *Hughes v. Lebron*, No. 14-CV-9479 (PAE), 2016 WL 5107030, at *8 (S.D.N.Y. Sept. 19, 2016) (internal citations omitted). "[U]nlike at [a criminal] trial, where circumstantial evidence must support a finding of culpable intent beyond a reasonable doubt, a probable cause determination . . . can be made on 'substantially less' evidence." *Zalaski*, 723 F.3d at 393 (internal citation omitted). "Moreover, because 'the practical restraints on police in the field are greater with respect to ascertaining intent . . . , the latitude accorded to officers considering the probable cause issue in the context of mens rea crimes must be correspondingly great." *Id.* (quoting *Cox v. Hainey*, 391 F.3d 25, 34 (1st Cir. 2004)). Uzoukwu's "combative tone and abusive language, coupled with the location of the incident, were 'sufficient to warrant a person of reasonable caution'" to conclude that he was recklessly creating a risk of public disruption. *Nelson*, 500 F. App'x at 94 (quoting *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008)); *see also, e.g.*, *Weaver*, 16 N.E.2d at 635 (upholding conviction for disorderly conduct where defendant was screaming obscenities and acting in a threatening manner in parking lot outside a mini-mart and gas station in the middle of the night); *People v. Diaz*, 868 N.Y.S.2d 861, 863 (N.Y. Crim. Ct. 2008) ("A loud and violent confrontation with the police in a residential neighborhood late at night carries the potential of [public disturbance]. Whether or not the defendant's conduct actually caused a public

inconvenience is irrelevant to a Disorderly Conduct charge."). The jury thus had sufficient evidence to reasonably conclude that there was probable cause for disorderly conduct.[5]

### C. Obstruction of Governmental Administration

The evidence at trial also supported a jury verdict on the basis of probable cause for obstruction of governmental administration for Uzoukwu's failure to comply with the Officers' lawful order that he leave the park. Under New York law,

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . .

N.Y. Penal Law § 195.05. An officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with a lawful order from a police officer. *Marcavage v. City of New York*, No. 05-CV-4949 (RJS), 2010 WL 3910355, at *10 (S.D.N.Y. Sept. 29, 2010), *aff'd*, 689 F.3d 98 (2d Cir. 2012); *see id.* ("The Court finds that Plaintiffs' repeated refusal to follow lawful dispersal orders created probable cause to arrest Plaintiffs for obstruction of governmental administration . . . ." (internal citation omitted)). Having reasonably concluded that Uzoukwu was violating the park rule prohibiting adults not in the company of children, Officers Miluso and Krawiecki lawfully ordered Uzoukwu to leave the playground. *See* Tr. 144:3–

---

[5] Contrary to Uzoukwu's contention that he was arrested for "conduct . . . directed only at the police and motivated by protestations regarding questionable police conduct," Pl.'s Mem. 20, there is sufficient evidence in the record for the jury to have reasonably concluded that this incident was not merely a personal clash of words, but one that disrupted the parents and children in the public playground. This case is thus distinguishable from those cited by Plaintiff. *See, e.g., City of Houston v. Hill*, 482 U.S. 451, 454, 463 (1987) (holding city ordinance prohibiting a person from "in any manner oppos[ing], molest[ing], abus[ing] or interrupt[ing] any policeman in the execution of his duties" unconstitutionally overbroad in a case where appellant had been arrested merely for shouting, "Why don't you pick on somebody your own size?"); *Norwell v. City of Cincinnati*, 414 U.S. 14, 16 (1973) (per curiam) ("[W]e are convinced that petitioner was arrested and convicted merely because he verbally and negatively protested Officer Johnson's treatment of him."); *People v. Baker*, 984 N.E.2d 902, 907 (N.Y. 2013) (holding arrest for disorderly conduct unlawful where it was "purely a personal clash" that was "extremely brief, lasting about 15 seconds," "not accompanied by menacing conduct," and "there was no basis to infer that [the officer] felt threatened by the statements).

5; 301:11–14; *see also Caravalho v. City of New York*, No. 13-CV-4174 (PKC), 2016 WL 1274575, at * 6 (S.D.N.Y. Mar. 31, 2016) ("A dispersal order reasonably calculated to enforce lawful Park Rules is itself 'lawful' . . . ."). At trial, the evidence established that Uzoukwu did not leave the playground, refusing to comply with the Officers' lawful order. Therefore, the jury had sufficient grounds to conclude that the Officers had probable cause to arrest Uzoukwu for obstruction of governmental administration.

Uzoukwu contends that these justifications are pretextual, and that the real reason that they arrested him was his refusal to answer the Officers' questions. *See* Pl.'s Mem. 22–23. "The arresting officers' subjective basis for the arrest, however, is irrelevant to whether or not probable cause existed; rather, the existence of probable cause is assessed from the standpoint of an objectively reasonable police officer." *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 388 (E.D.N.Y. 2013); *see also Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015) ("Even if, as [plaintiff] suspects, the motivation for the arrest was his remark to the officer, the violation of the order to disperse provided probable cause to arrest. An officer's motivation is irrelevant to the Fourth Amendment validity of an arrest." (citing *Whren v. United States*, 517 U.S. 806, 813 (1996))). Fatal to Uzoukwu's argument, moreover, is Uzoukwu's concession, Pl.'s Mem. 22, that the jury was properly instructed that, "[o]ne cannot obstruct governmental administration . . . merely by refusing to answer police questions or to provide identification," Tr. 903:6–8.

In sum, viewed in the light most favorable to Defendants, the trial evidence was sufficient for the jury to have reasonably concluded that Defendants had probable cause to arrest Uzoukwu for violation of a park rule, disorderly conduct, and obstruction of governmental administration. Accordingly, Uzoukwu's Rule 50(b) motion for judgment as a matter of law is denied.[6]

---

[6] As there is a sufficient basis for the jury's verdict that the Officers had probable cause to arrest Uzoukwu, the Court need not reach the question of whether the Officers are entitled to qualified immunity

## II. Rule 59(a) Motion

Uzoukwu also moves for a new trial pursuant to Rule 59(a) on the basis that the jury's verdict was against the weight of the evidence. That argument fails for the reasons stated above. Uzoukwu further contends that there are a "myriad of issues" warranting a new trial. Pl.'s Mem. 25. These contentions fail as well.

First, Uzoukwu argues that, in light of the fact that he had surgery on his neck approximately three weeks before the arrest, it "borders on verifiable perjury" that he was yelling obscenities in the park. *Id.* The Court disagrees. Both Defendants testified about Uzoukwu's yelling and screaming in the park, *see* Tr. 92:12–93:4; Tr. 299:15–17, and it was reasonable for the jury to have credited their testimony and disbelieved Uzoukwu's account. "[T]rial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge 'should rarely disturb a jury's evaluation of a witness' credibility.'" *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998)). Without clear and convincing evidence of false testimony, accusations of perjury are insufficient to disturb the jury's verdict. *See Wall v. Constr. & Gen. Laborers' Union*, No. 97-CV-0942 (JCH), 2006 WL 197353, at *6 (D. Conn. Jan. 24, 2006) (denying Rule 59 motion where "plaintiffs have not demonstrated . . . by clear and convincing evidence that [defendant] gave false testimony, let alone testimony that constitutes perjury."); *Ricciuti v. New York City Transit Auth.*, 70 F. Supp. 2d 300, 315 (S.D.N.Y. 1999) ("Perjury is a 'heinous crime,' surely not the less so if committed by a servant of the public such as a police officer; accordingly, if plaintiffs are to obtain a new trial on the ground that a defendant committed perjury, they must demonstrate that perjury by clear and convincing proof.").

Uzoukwu next argues that he is entitled to a new trial because he was prejudiced by the Court's decision to bifurcate the trial into liability and damages phases. Pl.'s Mem. 25.

Specifically, he argues that bifurcation prevented him from introducing evidence that he was unable to engage in disorderly conduct due to his recent surgery. *Id.* The Court, however, after granting Defendants' motion to bifurcate once the trial had been limited to the issue of false arrest, noted that "[t]o the extent . . . that plaintiff needs to use such medical evidence during the liability phase of the trial, he may make a motion at that time and I will consider it." April 22, 2016 Tr. 37:8–15. Uzoukwu never made such a motion. Moreover, he fails to specify what evidence he was purportedly prevented from introducing. Thus, to the extent that this challenge is not waived, it fails.

Uzoukwu also argues that he was prejudiced by the introduction of "immigration evidence." Pl.'s Mem. 25. This evidence regarding whether or not Uzoukwu's family was in the United States at the time was probative of whether his children were with him in the park during the incident in question, as he claimed, and thus highly relevant to his credibility. Uzoukwu and Defendants presented starkly different versions of events. Uzoukwu testified that, at the time of his arrest, his children were visiting him, having flown with him from Nigeria in February 2008. Tr. 597:7–16; 608:11–17. He further claimed that his children were with him in Dutch Kills Playground when he was approached, searched, and beaten by the two Officers. Tr. 493–96, 505–508. He testified that he told the Officers and the Sergeant that his children were with him in the playground, Tr. 510:14–21, and that he tried to call out to them, but, because he had lost his voice from the surgery, they could not hear him. Tr. 511–12.

Defendants, on the other hand, testified that they approached Uzoukwu because there was no indication he was with children. They claimed that they did not harm him, and maintained that, at no point during their interaction did Uzoukwu say he was with children, call to them, or point them out. Tr. 146:9–12; 298:23–25. Defendants thus argued that Uzoukwu's children were not

with him that day. To reinforce their theory and undermine Plaintiff's story, Defendants sought to introduce evidence that there was no record of Uzouwku's children or wife—who are citizens of and reside in Nigeria—entering the United States during the period when Uzoukwu claimed they did. *See* Tr. 387:9–388:1. Defendants thus introduced at trial a certification from U.S. Customs and Border Control, which was authenticated by Customs and Border Patrol Officer Deep Chopra. Tr. 384:15–388:1.[7] The certification represented that the agency had conducted a search, and found "no responsive border crossing records" for Uzoukwu's wife and two children for the period January 1, 2007 to January 1, 2009. Defs.' Ex. E. Given the differing versions of events, the Court concluded that this record was probative of Defendants' claim that Uzoukwu's children were not in the country and therefore not in the park on the day in question, in what would otherwise have been a purely he said-she said dispute.

Uzoukwu nonetheless argued that this evidence was unduly prejudicial because it "opens up the issue of undocumented immigration." Dkt. 140 at 2 (Plaintiff's April 30, 2016 Letter). Defendants, however, never alleged nor sought to raise the inference that Uzoukwu's children entered the United States illegally; indeed, to have done so would have been counter to their own theory. Instead, they were seeking to show that Uzoukwu's children were not in the United States at all, and that Uzoukwu's testimony that they were with him in Dutch Kills Playground on the day in question was false. Thus, to the extent that this evidence, which showed no record of the children's entry during the period that Uzoukwu claimed they flew to the United States, was prejudicial, it was not unfairly so. The Court thus properly denied Uzoukwu's motion to exclude

---

[7] It was only after Uzoukwu sought and received permission to amend the pretrial order to add his wife and one of his children as witnesses prior to the retrial, *see* Dkts. 87, 101, that Defendants sought to introduce this evidence. Uzoukwu, however, chose not to call his wife and child after all.

this evidence under Rule 403 of the Federal Rules of Evidence. Uzoukwu's motion for a new trial on this basis is accordingly denied.

Fourth, Uzoukwu argues that the Court erred by instructing the jury on proximate cause, which, in light of the Court's decision to bifurcate the trial, he argues was not at issue during the liability phase of trial. Proximate cause, however, is relevant to the question of liability, i.e., whether Defendants were the ones to actually cause the arrest. *See, e.g., Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986) (rejecting district court's determination that a court's issuance of a warrant broke the causal link between the officer's "application for the warrant" and the "improvident arrest" (citing *Monroe v. Pape*, 365 U.S. 167, 187 (1961)); *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998) ("[I]n all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury," i.e., the deprivation of his constitutional right.); *Arnold v. Geary*, No. 09-CV-7299 (GWG), 2013 WL 4269388, at *6 (S.D.N.Y. Aug. 16, 2013) ("[T]here is no evidence that would allow a reasonable jury to find that the misdemeanor arrest was the proximate cause of the judge's ordering remand on the robbery charge."), *aff'd*, 582 F. App'x 42 (2d Cir. 2014) (summary order). Even assuming it was error to instruct the jury on causation, however, Uzoukwu fails to articulate how this prejudiced him. *See SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 119 (2d Cir. 2006) (A reviewing court "will set aside a judgment secured by an erroneous charge 'only if the appellant shows that the error was prejudicial in light of the charge as a whole.'"). This challenge thus fails.

Lastly, Uzoukwu argues that the Court's refusal to give "our instructions on the theory of the case under the First Amendment" warrants a new trial. Pl.'s Mem. 25. In his submissions, Uzoukwu does not identify the language to which he is referring, nor does he explain how it purportedly prejudiced him. Based on a review of the record, Uzoukwu's objection appears to be

based on a request he made in his May 7, 2016 letter to the Court. In that letter, Uzoukwu requested "SOME language that supports the *federal Constitutional right* at issue in this trial." Dkt. 144 at 3 (Plaintiff's May 7, 2016 Letter) (emphasis in original). The Court subsequently added the following language to the parties' draft charge, which was adapted from the Second Circuit's *Uzoukwu* opinion: "One cannot obstruct governmental administration, however, merely by refusing to answer police questions or to provide identification." Tr. 809:5–9. During the May 9, 2016 charge conference, Uzoukwu requested additional language from *Uzoukwu*, specifically that, "In New York, an individual to whom the police officer addresses a question has a constitutional right to not to respond. Similarly, for substantially the same reasons, under New York law obstruction of governmental administration cannot rest upon refusal to provide identification." *See* Tr. 809:11–22. The Court, however, found this additional language unnecessary, although Plaintiff used similar language in his summation to the jury. Notably, Uzoukwu does not argue that the language included in the charge was legally incorrect; indeed, the substance is consistent with the language he proposed. As Uzoukwu has not shown that the jury instructions given were legally incorrect, led to any jury confusion, or caused any prejudice, he has failed to show that the instructions resulted in a "seriously erroneous result" or "miscarriage of justice" sufficient to warrant a new trial. *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005) (quoting *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004)); *see also Newport Elecs., Inc. v. Newport Corp.*, 56 F. App'x 63, 65 (2d Cir. 2003) (summary order) ("[D]istrict courts are given wide discretion in instructing the jury, and 'instruction[s] will be deemed adequate, so long as the charge, taken as a whole, is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it.'" (quoting *Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 996 (2d Cir. 1991)).

Plaintiff's motion for a new trial pursuant to Rule 59(a) is thus denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59(a) is denied. The Clerk of Court is respectfully directed to close the motions pending at docket entries 170 and 171.

SO ORDERED.

Dated:   November 4, 2016
         New York, New York

                                        _____
                                        Ronnie Abrams
                                        United States District Judge